**ROSENBERG, SHPALL & ZEIGEN, APLC**
David Rosenberg (SBN 99105)
Chad F. Edwards (SBN 308909)
A Professional Legal Corporation
BERNARDO HEIGHTS CORPORATE CENTER
10815 Rancho Bernardo Road, Suite 310
San Diego, California 92127
Telephone: (619) 232-1826
Facsimile: (619) 232-1859

**FARNAES & LUCIO, APC**
Malte Farnaes (SBN 222608)
Christina Lucio (SBN 253677)
2235 Encinitas Blvd, Suite 210
Encinitas, California 92024
Phone: 760-942-9430
Fax: 760-452-4421

Attorney for Plaintiffs
CINDY FRANCO, OCTAVIO DAVILA, and ABRA DAVILA, individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY FRANCO, OCTAVIO DAVILA, ABRA DAVILA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>C2 FINANCIAL CORPORATION, a California corporation, PARTNERS CREDIT AND VERIFICATION SOLUTIONS, LLC., an Illinois LLC., and DOES 1 through 100, Inclusive;<br><br>Defendants. | Case No: '20CV1754 GPC MSB<br><br>**CLASS ACTION COMPLAINT**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. SECTION 1681, *ET SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

-1-
COMPLAINT

Plaintiffs CINDY FRANCO, OCTAVIO DAVILA, and ABRA DAVILA, individually and on behalf of all others similarly situated, hereby allege as follows:

## INTRODUCTION

1. Plaintiffs CINDY FRANCO, OCTAVIO DAVILA, ABRA DAVILA (hereinafter referred to as "Plaintiffs"), bring this lawsuit against Defendants C2 FINANCIAL CORPORATION and PARTNERS CREDIT AND VERIFICATION SOLUTIONS LLC., (hereinafter "Defendants") with regard to Defendants' unauthorized and unlawful credit inquiries in violation of the Fair Credit Reporting Act ("FCRA").

2. Plaintiffs bring this action, on their own behalf and on behalf of a class of similarly situated individuals, to seek actual damages, statutory damages, injunctive relief, attorneys' fees and costs, and other relief the Court deems appropriate.

3. Plaintiffs allege as follows, upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation.

4. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, which Plaintiffs allege on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, Plaintiffs allege that any violations by Defendants were knowing and intentional, and that Defendants did not maintain procedures reasonably adapted to avoid any such violations.

7. Unless otherwise indicated, the use of Defendants in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

///

8. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, Inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and based thereon allege that each of the fictitiously named Defendants is negligently responsible in some manner for the occurrences herein alleged and that Plaintiffs= injuries as herein alleged were proximately caused by that negligence.

9. At all relevant times, as alleged more fully herein, each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture.

10. Each of the Defendants' acts alleged herein was done with the permission and consent of each of the other Defendants. At all times relevant hereto, Defendants were the alter egos of each other, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that all Defendants completely controlled, dominated, managed, and operated the other Defendants to suit their convenience.

## PARTIES

11. Plaintiffs CINDY FRANCO, OCTAVIO DAVILA, and ABRA DAVILA, are, and at all times mentioned herein were, individuals, residing in the County of San Diego, State of California.

12. Plaintiffs are natural persons who reside in San Diego County, in the State of California whose credit reports were affected by unauthorized inquiries. In addition, Plaintiffs are "consumers" as that term is defined by 15 U.S.C. section 1681a(c).

13. Plaintiffs are informed and believe, and thereupon allege, that Defendant C2 FINANCIAL CORPORATION ("C2"), is, and at all times mentioned herein was, a residential mortgage broker engaging in business in the County of San Diego, State of California.

14. Plaintiffs are informed and believe, and thereupon allege, that Defendant PARTNERS CREDIT AND VERIFICATION SOLUTIONS, LLC. ("PCVS"), is, and at all times mentioned herein was, a credit-related service provider and engaging in business in the County of San Diego, State of California.

15. Plaintiffs are informed and believe, and thereupon allege, that Defendants acquired Plaintiffs' credit information through unauthorized inquiries of Plaintiffs' "consumer reports" as that term is defined by 15 U.S.C. section 1681a(d)(1).

## JURISDICTION AND VENUE

16. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. ' 1681 et. seq.

17. This action arises out of Defendants' violations of the FCRA. Because Defendants do business within the State of California, County of San Diego, personal jurisdiction is established.

18. Venue is proper pursuant to 28 U.S.C. Section 1391(b).

## STANDING

19. Plaintiffs have standing to bring this matter as each suffered an injury-in-fact. See *Nayab v. Capital One Bank* (USA), N.A., 942 F.3d 480 (9th Cir. 2019) [a consumer suffers a concrete injury in fact, as required to have standing to pursue a FCRA claim, when a third party obtains a credit report for a purpose not authorized by the FCRA, regardless whether the report is published or otherwise used by that third party.]

///

///

-4-
COMPLAINT

## RELEVANT FACTS

20. At all times relevant, Plaintiffs are and were individuals residing within the State of California.

21. Plaintiffs are informed and believe, and thereon allege, that at all times relevant, Defendants conducted business in the State of California.

22. Plaintiffs are informed and believe, and thereon allege, that Defendants are "persons" as the term is defined by 15 U.S.C. section 1681a(b).

### Facts Related to Plaintiff Cindy Franco

23. Plaintiff Franco refinanced her home loan with Defendant C2 on or around July of 2019. At the time she refinanced, she did not authorize Defendants to run any subsequent credit inquiries after the July 2019 refinance.

24. In a gesture of good faith, Plaintiff Franco also referred numerous of her friends and colleagues to Defendant C2 for loan related matters, including refinancing.

25. On December 5, 2019, without prior authorization, Defendant C2 engaged in an unauthorized credit report inquiry, through Defendant PCVS, to all three major credit bureaus, which included Equifax, Experian and TransUnion ("Credit Bureaus").

26. Plaintiff Franco did not authorize Defendants to run her credit on December 5, 2019.

### Facts Related to Plaintiff Octavio Davila

27. Plaintiff Octavio Davila refinanced his home loan with Defendant C2, on or around October of 2018. At the time he refinanced, he did not authorize Defendants to run any subsequent credit inquiries after the October 2018 refinance.

28. On August 26, 2019, without prior authorization, C2 engaged in an unauthorized credit report inquiry, through Defendant PCVS, to all three major credit bureaus, which included Equifax, Experian and TransUnion.

29. Plaintiff Octavio Davila did not authorize Defendants to run his credit on August 26, 2019.

### Facts Related to Plaintiff Abra Davila

30. Plaintiff Abra Davila refinanced her home loan with Defendant C2, on or around October of 2018. At the time she refinanced, she did not authorize Defendants to run any subsequent credit inquiries after the October 2018 refinance.

31. On August 26, 2019, without prior authorization, C2 engaged in an unauthorized credit report inquiry, through Defendant PCVS, to all three major credit bureaus, which includes Equifax, Experian and TransUnion.

32. Plaintiff Abra Davila did not authorize Defendants to run her credit on August 26, 2019.

### General Allegations

33. 15 U.S.C. section 1681b(f) provides that "[a] person shall not use or obtain a consumer report for any purpose unless- (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

34. 15 U.S.C. section 1681e provides that "Every consumer reporting agency shall...require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose."

35. On each of the multiple occasions that Defendants requested Plaintiffs' credit reports from the Credit Bureaus, Defendants certified that they would use the information for a permissible purpose as enumerated under 15 U.S.C. section 1681b and for no other purpose.

36. Because the Credit Bureaus require a certification prior to the dissemination of a consumer's credit report, Defendants were on notice and aware

of the requirements under 15 U.S.C. section 1681b and other provisions of the FCRA.

37. 15 U.S.C. section 1681(b) delineates the only permissible uses of, or access to, consumer reports, including "to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

38. Defendants were not authorized to initiate any credit inquiry for Plaintiffs, and upon information and belief for the Class Members, after the initial inquiry (in Plaintiffs' case for the purpose of a single refinance transaction).

39. Plaintiffs, and upon information and belief the Class Members, Plaintiffs did not initiate any credit transaction with Defendants as provided in 15 U.S.C. § 1681b(a)(3)(A).

40. Plaintiffs, and upon information and belief the Class Members, were not involved in any credit transaction with Defendants involving the extension of credit to, or review or collection of an account of, the consumer as provided in 15 U.S.C. § 1681b(a)(3)(A).

41. Plaintiffs, and upon information and belief the Class Members, were not subject to any collection accounts, including any accounts that were purchased or acquired by Defendants that would permit Defendants to obtain Plaintiffs' credit reports as provided in 15 U.S.C. § 1681b(a)(3)(A).

42. Plaintiffs, and upon information and belief the Class Members, did not have any existing credit accounts that were subject to collection efforts by Defendants as provided in 15 U.S.C. § 1681b(a)(3)(A).

43. Plaintiffs, and upon information and belief the Class Members, did not engage Defendants for any employment relationship as provided in 15 U.S.C. §1681b(a)(3)(B).

44. Plaintiffs, and upon information and belief the Class Members, did not engage Defendants for any insurance as provided in U.S.C. section 1681b(a)(3)(C).

45. Plaintiffs, and upon information and belief the Class Members, did not apply for a license or other benefit granted by a governmental instrumentality as provided in 15 U.S.C. §1681b(a)(3)(D).

46. Plaintiffs, and upon information and belief the Class Members, did not have an existing credit obligation that would permit Defendants to obtain their credit reports as provided in 15 U.S.C. §1681b(a)(3)(E).

47. Plaintiffs, and upon information and belief the Class Members, did not conduct any business transaction nor incur any additional financial obligations to Defendants as provided 15 U.S.C. §1681b(a)(3)(F).

48. Defendants' inquiry for Plaintiffs' consumer report information falls outside the scope of any permissible use or access included in 15 U.S.C. § 1681b.

49. Therefore, Defendants violated 15 U.S.C. section 1681b by using Plaintiffs' consumer reports for impermissible uses that fall outside the scope of 15 U.S.C. section 1681b.

50. Because the Credit Bureaus require Defendants to certify a permissible purpose prior to the dissemination of each consumer credit inquiry under 15 U.S.C. section 1681e, Defendants were aware of and had the ability to comply with the requirements under 15 U.S.C. section 1681b and other provisions of the FCRA.

51. Defendants are also aware of the FCRA provisions because Defendants themselves are a credit furnisher who reports customer information to credit reporting agencies such as the Credit Bureaus.

52. Defendants acted willfully in a deliberate manner or in reckless disregard of the obligations imposed by the FCRA, and the rights of applicants and employees. The willfulness of Defendants' conduct is demonstrated, in part, by:

<mark>

    a. Defendants' practices were carried out in the manner that Defendant intended and not by mere accident or mistake.

    b. The statutory language and mandates restricting and governing Defendants' business and practice of conducting background, credit, and consumer checks have been in effect for decades.

    c. Defendants' conduct was at least reckless in failing to make an appropriate and effective effort to ascertain and comply with the FCRA provisions governing their conduct.

    d. Defendants knew or should have known about their legal obligations under the FCRA, as these obligations are well established in the law and large corporations (like Defendants) have access to legal counsel and written materials to apprise it of its duties under the FCRA.

53. Defendants' practices were carried out in the manner that Defendants' actions were willful under 15 U.S.C. section 1681n because Defendants were aware of the FCRA's prohibitions on impermissibly pulling consumers' credit reports. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-60 (2007); see also *Doe v. Sentech Employment Services, Inc.*, (2016 WL 2851427, *6 (E.D. Mich. May 16, 2016) citing *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *4 (D. Md. Jan. 25, 2012) ["Assertions that a defendant is aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal."].

54. Plaintiffs suffered an invasion of a legally protected interest when Defendants accessed their highly confidential personal information on their credit reports at a time when Defendants had no right to do so, which was an invasion of Plaintiffs' right to privacy. The FCRA, through 15 U.S.C. section 1681b, protects consumers like Plaintiffs from this precise behavior.

55. The FCRA expressly provides that Congress made the following finding: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. section 1681a(4) (emphasis added).

56. Plaintiffs were affected personally because when they realized the behavior of Defendants described above (pulling their credit reports without any authorization), Plaintiffs felt that their privacy had been invaded and that their personal and private information had been disclosed to Defendants, who had no right to Plaintiffs' information.

57. The injury suffered by Plaintiffs is concrete because, on information and belief, Defendants' violation of 15 U.S.C. section 1681b caused Plaintiffs' credit scores to drop, directly impacting Plaintiffs' credit availability and finances.

58. Plaintiffs also suffered from Defendants' invasion of Plaintiffs' privacy. In enacting 15 U.S.C. section 1681b, Congress specifically sought to protect consumers from invasions of privacy and created restrictions on access to consumers' sensitive financial information in their credit reports.

59. Further, Defendants increased the risk that Plaintiffs and the class members will be injured if there is a data breach on Defendants' computer systems by acquiring additional highly sensitive information about Plaintiffs and the class members and saving that information onto its computer systems. Data breaches are increasingly common and financial institutions like Defendants are frequent targets of cybercriminals.

60. As such, Plaintiffs are entitled to the remedies available under 15 U.S.C. section 1681n and 15 U.S.C. section 1681(o).

## CLASS ALLEGATIONS

61. Plaintiffs bring this action on their own behalf, and on behalf of all others similarly situated.

62. Plaintiff defines the proposed **FCRA Class** as follows:

For the period of five years from the date of the filing of this Complaint, all persons with addresses within California for whom Defendants ran two or more consumer credit report inquiries within a two year period.

63. Defendants and its employees or agents are excluded from the Classes. Plaintiffs do not know the number of members in the Classes, but believe the number is in the hundreds, if not thousands or more. This matter should therefore be certified as a Class action to assist in the expeditious litigation of this matter.

64. Plaintiffs and members of the Classes were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its/their agents, engaged in illegal and deceptive practices, when they submitted unauthorized consumer report inquiries under 15 U.S.C. section 1681 et seq. Plaintiffs and the Classes' members were damaged thereby.

65. This suit seeks only recovery of actual or statutory damages on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery, or to define additional classes or subclasses as appropriate.

66. The joinder of all members of the Class is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agents' records.

67. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The common questions of law and fact to the Class predominate over questions which may affect individual members of the Class, including the following:

///

///

(a) Whether, within the class period, Defendants or their agents submitted any consumer credit report inquiries that fell outside the scope of the authorization granted;

(b) Whether Defendants had a relationship with Plaintiffs and the members of the Class of the kind specified in 15 U.S.C. section 1681b(a)(3)(A)-(F);

(c) Whether Defendants obtained the credit report for a purpose for which the consumer report is authorized to be furnished under 15 U.S.C. section 1681b(a)(3)(A)-(F);

(d) Whether Defendants' purpose is certified in accordance with 15 U.S.C. 1681e by a prospective user of the report through a general or specific certification;

(e) Whether the authorization provided by Class Members encompasses the consumer reports procured by Defendants;

(f) Whether Plaintiffs and the members of the Class were damaged thereby, and the extent of damages for such violations.

68. Plaintiffs will fairly and adequately protect the interest of the Class.

69. Plaintiffs have retained counsel experienced in consumer class action litigation and in handling claims involving violations of the Fair Credit Reporting Act.

70. Plaintiffs' claims are typical of the claims of the Class, which all arise from the same operative facts involving unlawful collection practices.

71. A class action is a superior method for the fair and efficient adjudication of this controversy.

72. Class-wide damages are essential to induce Defendants to comply with the Federal and State laws alleged in the Complaint.

73. The interests of class members in individually controlling the prosecution of separate claims against Defendants is small because the damages in an

individual action under the FCRA is minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g. securities fraud.

74. Defendants have acted on grounds generally applicable to the Classes, thereby making appropriate final declaratory relief with respect to each class as a whole.

75. Plaintiffs contemplate providing notice to the putative class members by direct mail in the form of a postcard and via Internet website.

76. Plaintiff requests certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

## FIRST CAUSE OF ACTION

### (Violation of the FCRA)

77. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

79. As a result of each and every negligent violation of the FCRA, Plaintiffs are entitled to actual damages, pursuant to 15 U.S.C. section 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. section 1681o(a)(2), from Defendants.

80. As a result of each and every willful violation of the FCRA, Plaintiffs are entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the Court may allow for all other class members, pursuant to 15 U.S.C. section 1681n(a)(1)(A); punitive damages as the Court may allow, pursuant to 15 U.S.C. section 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. section 1681n(a)(3) from Defendant.

///

///

## REQUEST FOR JURY TRIAL

As declared by the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

## PRAYER FOR DAMAGES AND OTHER REMEDIES

1. An order certifying the Class as requested herein;
2. An order appointing the Plaintiffs as the representatives of the Class;
3. An order certifying Plaintiffs' counsel as Class Counsel;
4. An order requiring Defendants, at its own cost, to notify all members of the Classes of the unlawful acts discussed herein;
5. Injunctive relief requiring Defendants to refrain from further impermissible consumer credit pulls in compliance with 15 U.S.C. section 1681b;
6. Actual damages suffered by Plaintiffs and each Class member, pursuant to 15 U.S.C. § 1681o(a)(1), against Defendants;
7. Statutory damages of not less than $100 and not more than $1,000 to Plaintiffs and each Class member, pursuant to 15 U.S.C. § 1681n(a)(1), against Defendants;
8. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(a)(2); and
9. Any and all other relief that this Court deems just and proper.

Respectfully submitted,          ROSENBERG, SHPALL, AND ZEIGEN, APLC

Dated: September 8, 2020

David Rosenberg, Esq.
Chad F. Edwards, Esq.

*Attorneys for Plaintiffs*
CINDY FRANCO, OCTAVIO DAVILA, and ABRA DAVILA, individually and on behalf of all others similarly situated

FARNAES AND LUCIO, APC

Dated: September 8, 2020

*[signature]*

Christina Lucio, Esq.
Malte Farnaes, Esq.

*Attorneys for Plaintiffs*
CINDY FRANCO, OCTAVIO DAVILA, and ABRA DAVILA, individually and on behalf of all others similarly situated

CLASS ACTION COMPLAINT